# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | | |
|---|---|---|
| **MARK RANDALL TILLMAN,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-09-CA-582-SS** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:     The Honorable Sam Sparks, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum in Law in Support (Document 2); Respondent's Answer (Document 10); and Petitioner's response thereto (Document 13). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.     Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 403rd Judicial District Court of Travis County, Texas, in cause number 5040095. Petitioner was charged with the first degree felony offense of murder, to which he entered a plea of not guilty to a jury. On December 10, 2004, the jury found Petitioner guilty as charged and assessed punishment at 25 years imprisonment.

Petitioner's conviction was affirmed on July 7, 2006. Tillman v. State, No. 03-05-00038-CR, 2006 WL 1865040 (Tex. App. – Austin 2006, pet. ref'd). On December 19, 2007, the Texas Court of Criminal Appeals granted Petitioner permission to file an out-of-time petition for discretionary review. Ex parte Tillman, Appl. No. AP-75,808 (Tex. Crim. App. 2007). The Court of Criminal Appeals refused Petitioner's petition for discretionary review on August 20, 2008. Tillman v. State, PDR No. 013-08.

Petitioner also challenged his conviction in a state application for habeas corpus relief. On May 20, 2009, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. Ex parte Tillman, Appl. No. 68,958-02 at cover.

**B.     Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> The jury heard evidence that, on the morning of March 2, 2004, Porfirio Jaimes discovered the body of Elroy McBride on his property, where McBride had been living in a mobile home. Jaimes recounted that blood was pooled around McBride's head. Jaimes notified the authorities, and Deputy Keith Mutscher and Detectives Robert Speer and Rudy Woods of the Travis County Sheriff's Office went

to the property to investigate. Deputy Mutscher testified that McBride's body was located in a "tent-like" structure and covered under an "Indian or Mexican style blanket." Blood was splattered on the structure. A two-bladed axe, coated with blood and hair, was discovered near the body.

Detective Speer testified that Jaimes told him that he had seen a truck on the property the previous night, and that this truck was now parked "up the street on the corner." The officers and Jaimes went to the location where the truck was parked, which was in the street in front of a travel trailer. Speer testified that "within a matter of minutes" they were approached by Mark Tillman, who identified himself and verified that the truck belonged to him. Detective Woods testified that he did not see any evidence of bruises or injuries on Tillman. Woods testified that he asked Tillman if he knew Elroy McBride, and Tillman responded that he did. Woods also asked him if he and McBride had any kind of problems, and Tillman said they did not. Woods also testified that Tillman told him that he had the spent the previous night at his sister's house.

Speer testified that while Woods was talking to Tillman, Speer ran a background search on Tillman and discovered that he had an outstanding warrant related to an assault on a family member. Speer arrested Tillman pursuant to the outstanding warrant and transported him to the police station while Woods remained at the scene to continue the investigation.

Speer testified that, once they arrived at the station, he read Tillman his Miranda rights FN1 and proceeded to interview him on videotape. Speer testified that Tillman admitted that he had been with McBride during the previous night, but reiterated that there had been no kind of problem between the two of them and that Tillman had spent most of the night at his sister's house. Speer testified that after further questioning, Tillman eventually admitted that he and McBride had a disagreement during the evening, and McBride "had swung at him and that he had swung back." Speer testified that at this point Tillman stated, "Anything else, I am going to have to speak to an attorney." Speer did not interpret this statement as an unambiguous request for an attorney and continued to interview Tillman.FN2 Speer testified that Tillman eventually stated that McBride had called him an "ignorant Alabama hillbilly" on the night in question and stated that, whatever had happened to McBride, "he probably deserved it."

FN1. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

FN2. When asked how he would characterize Tillman's statement, Speer testified, "It's a statement. It's not a request." Speer did not believe the statement was "a demand for an attorney."

Tillman v. State, No. 03-05-00038-CR, 2006 WL 1865040, at *1 (Tex. App. – Austin 2006, pet. ref'd).

**C.    Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.    Petitioner's trial counsel provided ineffective assistance by:

    a.    opening the door to the admission of statements previously suppressed by the trial court;

    b.    failing to file a motion for mistrial on the ground that the prosecutor was disregarding the court's ruling suppressing certain statements; and

    c.    failing to object to the state's use of statements made by a witness who was deceased at the time of trial;

2.    Petitioner's appellate counsel provided ineffective assistance by:

    a.    failing to raise on appeal the claim of ineffective assistance of trial counsel;

    b.    failing to notify Petitioner that his appeal had been denied and that appellate counsel would not be representing him further; and

    c.    filing a frivolous appeal;

3.    The prosecutor erred in using Petitioner's statements, which the trial court had previously suppressed;

4.    The trial court erred by:

    a.    receiving into evidence the statement of a deceased witness;

    b.    failing to grant a mistrial where the prosecutor continually disregarded the court's rulings, and

    c.    allowing the prosecution to use Petitioner's previously suppressed statements; and

5.    The evidence was legally and factually insufficient to support a conviction.

**D.        Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application with the exception of his claim that Petitioner's appellate counsel provided ineffective assistance by filing a frivolous appeal (claim 2c).  A review of the state court records submitted by Respondent shows that Petitioner has properly his claims in previous state court proceedings with the exception of claim 2c.

## DISCUSSION AND ANALYSIS

**A.        Unexhausted Claim**

Petitioner has not exhausted his claim that appellate counsel filed a frivolous appeal.  Although Petitioner presented this claim in his first state application for habeas corpus relief, the state application was dismissed to allow Petitioner an opportunity to file an out-of-time PDR.  Petitioner did not raise this claim in his second state application for habeas corpus relief, which was denied on the merits.

Petitioner's unexhausted claim is procedurally barred.  A subsequent state application for habeas corpus on Petitioner's unexhausted issue would be futile as it would be dismissed pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 as an abuse of the writ.  When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case.  Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991).  In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief.  Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043

(1989).  Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally barred.  Coleman, 501 U.S. at 735, 111 S. Ct. at 2557.  The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  Id. at n.1.  However, a petitioner can still obtain federal habeas review on a claim denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice.  Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996) (citing Coleman, 501 U.S. at 750, 111 S. Ct. 2565, cert. denied, 519 U.S. 1093, 117 S. Ct. 773 (1997)).

Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claim would result in a miscarriage of justice.[1]  Therefore, Petitioner is barred from raising his unexhausted claim.

## B.    Exhausted Claims

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254.  Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[1]Moreover, the Court notes mere conclusory statements on the part of a petitioner do not raise a constitutional issue in a habeas case.  Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983).

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir. 2000) (quoting <u>(Terry) Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. <u>See</u> <u>id.</u>

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u> at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. <u>See</u> 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. <u>See</u> <u>id.</u> Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. <u>See</u> <u>id.</u> § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

1.    Ineffective Assistance of Trial Counsel

In his first ground for relief, Petitioner argues that he was denied effective assistance of counsel. Specifically, Petitioner asserts counsel was ineffective because he (a) opened the door to the admission of statements previously suppressed by the trial court, (b) failed to file a motion for mistrial on the ground that the prosecutor was disregarding the court's ruling suppressing certain statements, and (c) failed to object to the state's use of statements made by a witness who was deceased at the time of trial. Fed. Writ. Pet. at 7-7A; Pet. Memo at 2-3.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

### a.  Questioning Petitioner Regarding Statement to Police

Petitioner alleges counsel rendered ineffective assistance in questioning him about the subject matter of his statement to police, which the trial court had ordered suppressed. Fed. Writ Pet. at 7-7A; Pet. Memo. at 2-3. Petitioner claims that, because trial counsel "opened the door," the state was allowed to use the previously suppressed statements, which undercut Petitioner's claim that he acted in self-defense. Id. According to Petitioner, the introduction of these statements had the effect of "inflaming the minds of the jury that the applicant 'hack [sic] to death' the deceased because the 'deceased call [sic] the applicant a G-D-M-F illiterate hillbilly and the deceased was going to cut the applicant up.'" Id. at 7A. As explained by Respondent, Petitioner's claim is without merit as the introduction of the statement was the result of reasonable trial strategy.

Trial counsel, Tom Weber, submitted an affidavit during the state habeas proceedings, in which he explained the circumstances under which the complained of testimony was elicited at trial:

> Tillman had made incriminating statements, before his invocation of a right to an attorney, about fighting McBride in a drunken brawl that was ruled admissible. . . . Tillman said he hit McBride and left him alone on the ground. Another witness . . . testified for the State about the conflict between the defendant and the victim. DNA (blood) found on Tillman's jeans and sweatshirt matched up to the victim's

DNA, according to the testifying DPS Crime Lab Technician. The State's evidence that Tillman was guilty of killing McBride was therefore substantial. The victim suffered five brutal wounds to the head by an axe. The victim's blood was all over Tillman's clothes. Tillman was the last person with the victim, and Tillman admitted he fought the victim . . . Tillman wanted to testify to try to get a self-defense charge, or a manslaughter charge. Tillman instructed me that he wanted to testify about defending himself against Mc Bride and that McBride called him a hillbilly. . . .

It is clear from the transcript that I did not bring up the language about the accused being called a Hillbilly by the victim. Tillman offered that himself in his own testimony. . . . Because only Tillman and McBride were present at the time of McBride's death, Tillman was insistent that he testify and present to the jury how the whole incident occurred. Tillman brought up the hillbilly comment to support McBride as the aggressor. Only because of Tillman's testimony did he get a self-defense charge. . . .

The combination of Tillman's own incriminating statements, DNA evidence on Tillman's clothes linking him to the murder, and testimony of witnesses at the scene proved insurmountable to a not guilty verdict. Also, the five blows to the deceased played a huge role in preventing the jury from accepting the self-defense argument. . . . The evidence of the aggressiveness of the decedent toward Tillman, the witnesses I called that told of McBride's aggressiveness . . . and Benesh's statement [that Tillman told Benesh that he acted in self-defense] in fact did mitigate Tillman's punishment. I tried the case exactly as Tillman wanted, and with complete preparation on my part.

Ex parte Tillman, Appl. No. 68,958-02 at 50-53.

The state habeas court found counsel's affidavit credible. Id. at 89. The state court concluded that Petitioner had not demonstrated deficient performance or prejudice under Strickland. Id. at 90. The court found that Petitioner voluntarily testified about his statement to police and the victim's remarks to the petitioner as part of his trial strategy. Id. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

As explained by Respondent, Petitioner testified as to the statements which had previously been suppressed, as this fit within Petitioner's trial strategy. Petitioner has not overcome the strong

presumption that counsel's decision to have Petitioner testify was sound trial strategy. Moreover, given the overwhelming evidence of Petitioner's guilt, Petitioner has failed to show there is a reasonable probability that he would not have been convicted had Petitioner not testified about the statements made by the victim to the petitioner. The Fifth Circuit has held on several occasions that overwhelming evidence of a defendant's guilt supports the conclusion that he suffered no prejudice as a result of his counsel's performance and mistakes. See, e.g., United States v. Royal, 972 F.2d 643, 651 (5th Cir. 1992); United States v. Oakley, 827 F.2d 1023, 1026 (5th Cir. 1987) (per curiam).

      b.     Failure to File a Motion for Mistrial

Relatedly, Petitioner argues counsel was ineffective for failing to file a motion for mistrial after the state used Petitioner's statements, which the trial court had ordered suppressed. Fed. Writ Pet. at 7A; Pet. Memo. at 2-3. As explained by Respondent, counsel was not deficient, because counsel had questioned Petitioner on direct examination about the statements. Accordingly, the State was free to do the same on cross-examination under Texas Rule of Evidence 107. Counsel is not ineffective in failing to raise futile or meritless objections. Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990).

The state court concluded Petitioner had not demonstrated deficient performance or prejudice under Strickland. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

      c.     Witness Statement

Petitioner also argues counsel was deficient in failing to object to the State's introduction of a statement made by Anthony Benesh, a witness who was deceased by the time of trial. Fed. Writ

Pet. at 7A. As explained by Respondent, Benesh's statement was introduced by Petitioner's counsel as part of his trial strategy to prove Petitioner acted in self-defense.

In his affidavit counsel stated:

> I also introduced a statement of Anthony Benesh, a deceased friend of Tillman's who said that Tillman . . . told Benesh that Tillman only killed "Mack" (McBride) in self-defense after McBride attacked Tillman with a knife, which was found at the crime scene. . . .[T]his statement completely supported Tillman's self defense claim. . . . Prior to trial, and during the trial, Tillman repeatedly urged me to introduce Benesh's statement, which supported Tillman's self defense claim.

Ex parte Tillman, Appl. No. 68,958-02 at 52-53. Again, the state habeas court concluded that Petitioner did not show that he received ineffective assistance of counsel. Id. at 90. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Petitioner has not overcome the strong presumption that counsel's decision to introduce the statement was sound trial strategy. Moreover, given the overwhelming evidence of Petitioner's guilt, Petitioner has failed to show there is a reasonable probability that he would not have been convicted had Benesh's statement not been introduced.

2. Ineffective Assistance of Appellate Counsel

Next, Petitioner argues appellate counsel was ineffective. Specifically, he argues counsel was ineffective for (a) failing to raise the claim of ineffective assistance of trial counsel on appeal and (b) failing to notify Petitioner that his appeal had been denied and that appellate counsel would not be representing him further. Fed. Writ Pet. at 7, 7B; Pet. Memo. at 4.

A criminal defendant has a constitutional right to effective assistance of counsel in his first appeal as of right. Hughes v. Booker, 203 F.3d 894, 896 (5th Cir. 2000) (citing Evitts v. Lucey, 469

U.S. 387, 293-95, 105 S. Ct. 830, 834 (1985)).  Where a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial.  Id. (citing Penson v. Ohio, 488 U.S. at 84, 109 S. Ct. at 352-54 (citing Strickland v. Washington, 466 U.S. 668, 689-94, 104 S. Ct. 2052, 2065-67 (1984))).

On state habeas review the court found that trial counsel was pursuing a reasonable trial strategy under the circumstances and in full consultation with his client.  Ex parte Tillman, Appl. No. 68,958-02 at 89.  The state court determined an ineffective assistance of counsel claim would have lacked any merit, and appellate counsel was not derelict in choosing not to raise such a claim. Id.  The state court concluded that Petitioner had not demonstrated deficient performance or prejudice under Strickland.  Id. at 90.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  As explained above, trial counsel was not ineffective. Therefore, failing to raise a claim of ineffective assistance of counsel in Petitioner's appeal was not deficient.  Moreover, prejudice does not result from appellate counsel's failure to assert a meritless claim or a meritless argument.  United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994).

With respect to Petitioner's claim that appellate counsel failed to notify Petitioner of the outcome of his direct appeal, his claim is moot.  As explained by the state court, Petitioner was granted permission to file an out-of-time petition for discretionary review.  Ex parte Tillman, Appl. No. 68,958-02 at 88.

### 3.    Prosecutorial Misconduct

In his next ground for relief Petitioner argues the prosecutor erred in questioning Petitioner about the subject matter of the statements that had previously been ordered suppressed. Fed. Writ. Pet. at 7; Pet. Memo. at 4-5. On state habeas review the court concluded:

> The applicant has not shown that any prosecutorial misconduct occurred when the State inquired into the applicant's statement to police and the victim's remarks to the applicant after the applicant had voluntarily testified about these matters himself as part of his trial strategy.

Ex parte Tillman, Appl. No. 68,958-02 at 90.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. As discussed above, the prosecutor did not err in using these statements, as counsel "opened the door" to the questioning as part of trial strategy.

### 4.    Trial Court Error

In a related ground for relief Petitioner argues the trial court abused its discretion by (a) admitting into evidence statements of a deceased witness, (b) failing to grant the defense's motion for a mistrial,[2] and (c) allowing the prosecution to use statements which had previously been suppressed. Fed. Writ. Pet. at 7, 8; Pet. Memo. at 4-6. On state habeas review the state court concluded that Petitioner had not shown that the trial court erred in admitting various evidentiary matters. Ex parte Tillman, Appl. No. 68,958-02 at 90. The state court additionally concluded that Petitioner's claims were not cognizable on collateral attack. Id.

---

[2] The Court has been unable to find where counsel allegedly moved for a mistrial. Although Respondent noted the same in his answer, Petitioner failed to clarify when a mistrial was requested.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710 (1993).

> [U]nder Brecht, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the Brecht standard, of the error, then we must conclude that it was harmful.

Mayabb v. Johnson, 168 F.3d 863, 868 (5th Cir. 1999) (quoting Woods v. Johnson, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. Brecht, 507 U.S. at 637.

Petitioner's counsel introduced the deceased witness's statement and opened the door regarding Petitioner's statement as part of his trial strategy. As such, Petitioner is unable to show that the trial court's alleged errors prejudiced him or rendered his trial fundamentally unfair. Accordingly, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

5.    Sufficiency of the Evidence

In his final ground for relief Petitioner alleges the evidence presented at trial was legally and factually insufficient to support his conviction. Specifically, Petitioner argues the State failed to disprove his claim that he acted in self-defense. Fed. Writ Pet. at 7B; Pet. Memo. at 7.

a.    Legal Sufficiency

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996).

In order to find Petitioner guilty of murder, the jury had to find that he (1) intentionally or knowingly caused the death of an individual; (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual; or (3) committed or attempted to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual. TEX. PENAL CODE ANN. § 19.02(b). Self-defense is an affirmative defense to murder. In Texas a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX. PEN. CODE ANN. § 9.31(a).

Petitioner challenged the legal sufficiency of the evidence on direct appeal. The state appellate court noted:

> Whether Tillman reasonably believed that the use of deadly force was immediately necessary under the circumstances was a fact issue for the jury. Saxton v. State, 804 S.W.2d at 913-14. The jury heard conflicting evidence regarding the

16

circumstances preceding McBride's death. Tillman testified that on the night of the incident, he and McBride were sitting around and drinking beer with Jaimes and some of McBride's friends. According to Tillman, McBride "started getting real belligerent" and told Tillman to "shut up" and "stop embarrassing him" in front of his friends. Tillman testified that McBride had become upset because Tillman had called him "crazy." Later that night, after Jaimes and the others had departed, Tillman was sitting in his truck when McBride approached him, "barked" vulgar language at him, and grabbed him by the shirt, ripping off the shirt and Tillman's reading glasses in the process. Tillman testified that he responded by knocking down McBride with his fist. Tillman testified that he then went from his truck to where he had been sitting earlier to retrieve some of his belongings. Tillman testified that as he was returning to his truck, McBride came running towards him with a butcher knife in his hand. Tillman testified that he again punched McBride, and that this punch rendered McBride temporarily unconscious. Tillman testified that once McBride regained consciousness, Tillman helped him up and the two of them sat down and started talking. Tillman testified that he "apologized, but told McBride that he should not have been chasing him around. Tillman testified that this caused McBride to get upset again, and McBride grabbed the butcher knife and "lunged at" Tillman with it. Tillman testified that at this point he grabbed the axe and swung it at McBride. When asked by defense counsel how many times he hit McBride with the axe, Tillman responded, "I remember twice."

Physical evidence was inconsistent with Tillman's testimony. Medical examiner Dr. Vladimir Parungao performed an autopsy on McBride and testified that the victim had been struck with an axe numerous times while he was lying on the ground. Parungao described five-not two-"chopping" wounds to the victim's head and neck: one to the right side of the forehead; one to the jaw; and three to the left side of the neck. In Parungao's opinion, the blows to the neck had severed the victim's carotid artery and jugular vein and fractured his larynx, hyoid bone, and his second, fourth, and fifth cervical vertebrae. Parungao testified that any one of the five blows would have knocked the victim to the ground, and any one of the three blows fracturing the cervical vertebrae would have paralyzed the victim. Parungao also testified that the three neck wounds were "side by side," which indicated to him that the blows to the neck probably came in succession while the victim was lying on the ground. Based on this evidence, the jury could rationally have believed that, once the victim was lying on the ground paralyzed, it was highly unlikely that Tillman's use of the axe was immediately necessary to protect himself.

In addition, the jury heard Tillman testify that McBride had called him an "ignorant Alabama hillbilly" and that this remark had angered him. Defense counsel asked Tillman if this anger was a factor in what he did, and Tillman testified that it was. The jury could rationally believe that it was Tillman's anger, and not fear for his safety, that caused Tillman to repeatedly hit McBride with the axe.

The State also admitted into evidence a statement given to police by Anthony Benesh, who owned the travel trailer in front of which Tillman had parked his truck after the murder. Benesh's statement read, in relevant part:

> Last night, on 1st of March, about 11:30 p.m. to 12 midnight, I was asleep in my trailer. [Mark] Tillman woke me up, beating on my door. I got up and let him in. He had two beers and a bottle of whiskey in his hands. He was upset, and said, 'I have done a real bad thing.' He was real upset, about to cry. He sat on a box and he said Mack hit him four or five times and was cussing him. He said he couldn't take any more and he had found a double bit axe, and he hit Mack with it.FN5

> > FN5. Benesh died of natural causes prior to trial, but his written statement to the police was admitted into evidence and read to the jury.

Tillman v. State, No. 03-05-00038-CR, 2006 WL 1865040, at *4-5 (Tex. App. – Austin 2006, pet. ref'd).

The appellate court held that the jury could rationally conclude that this statement refutes Tillman's testimony that he had struck McBride with an axe to defend himself. Id. at *5. The court held, viewing the evidence in the light most favorable to the verdict, that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Id.

Although Petitioner alleges the State failed to disprove his theory of self-defense, the State clearly provided strong expert testimony to contradict Petitioner's version of events, such that the jury could rationally conclude that Petitioner did not act in self-defense. 4 RR 33-67. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim does not warrant federal habeas relief.

### b. Factual Sufficiency

Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases.  Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979).  Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."  Id.  The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority.  Id. at 129-30; Bigby v. State, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994).  However, while Texas has permitted factual sufficiency reviews, under authority derived from Texas law, there is no corresponding federal right to such reviews under the United States Constitution.  Under settled Fifth Circuit authority, a state may impose a more exacting standard for determining the sufficiency of the evidence but challenges to state convictions under § 2254 need only satisfy the Jackson standard.  West v. Johnson, 92 F.3d 1385, 1394 (5th Cir. 1996); Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990); Jones v. Butler, 864 F.2d 348, 361 (5th Cir. 1988).  Accordingly, Petitioner's claim attacking the factual sufficiency of the evidence is not cognizable in federal habeas proceedings.

### RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of March, 2010.

ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE