**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**MARK RANDALL TILLMAN,**
                              **Petitioner,**

**-vs-**                                                              **Case No.  A-09-CA-582-SS**

**RICK THALER, Director,**
**Texas Dept. of Criminal Justice-Correctional**
**Institutions Division,**
                              **Respondent.**

_____

**O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause,

specifically Petitioner Mark Randall Tillman ("Petitioner")'s Application for Habeas Corpus Relief

under 28 U.S.C. § 2254 [#1], Petitioner's Memorandum in Support of Petition [#2]; Respondent

Rich Thaler ("Respondent")'s Answer [#10], and Petitioner's Response thereto [#13]; the Report

and Recommendation of the Magistrate Judge [#14], Petitioner's Motion for an Extension of Time

[#16], and Petitioner's Objections to the Report and Recommendation [#17].  This Court finds

Petitioner's petition for writ of habeas corpus should be DENIED, for the reasons set forth below.

All matters in this case were referred to the Honorable Robert Pitman, United States

Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(e) of

Appendix C of the Local Court Rules of the United States District Court for the Western District of

Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended,

effective December 1, 2002.  On March 15, 2010, the Magistrate Judge issued his Report and

Recommendation that Petitioner's application for federal habeas corpus relief be denied.  On March

29, 2010, Petitioner filed a motion requesting more time in which to file his objections to the Report and Recommendation.  Petitioner eventually filed his objections to the Report and Recommendation on April 23, 2010.  In this order, the Court GRANTS Petitioner's request for a time extension, and thus, the Court reviews the Magistrate Judge's Report and Recommendation de novo.  28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").[1]  Having reviewed the petition, the Respondent's brief in support, Petitioner's response thereto, the Report and Recommendation, the objections, the applicable law, and the case file as a whole, the Court ACCEPTS the Magistrate Judge's Report and Recommendation.

## BACKGROUND

### A.    Procedural Background

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 403rd Judicial District Court of Travis County, Texas, in cause number 5040095, styled *The State of Texas v. Mark Tillman*.  Petitioner was convicted of murder in the first degree and sentenced to 25 years imprisonment.

Petitioner appealed his conviction, which was affirmed on July 7, 2006.  *Tillman v. State*, No. 03-05-0038-CR, 2006 WL 1865040 (Tex. App.–Austin July 7, 2006, pet. ref'd).  The Texas Court of Criminal Appeals granted Petitioner permission to file an out-of-time petition for discretionary review ("PDR").  *Ex parte Tillman*, Appl. No. AP-75,808 (Tex. Crim. App. 2007).  The Court of Criminal Appeals refused Petitioner's PDR on August 20, 2008.  *Tillman v. State*, PDR No. 013-08.

---

[1]Petitioner requested an extension until April 28, 2010.  By submitting his objections to the Court prior to that deadline, the Court considers his objections timely filed.

Petitioner also challenged his conviction in a state habeas corpus petition.  On May 20, 2009, the Court of Criminal Appeals denied his application without written order or a hearing, pursuant to the trial court's findings.  *Ex parte Tillman*, Appl. No. 68,958-902, at cover.  Petitioner now asks this Court to grant him federal habeas corpus relief.

**B.    Factual Background**

The Court of Appeals provided a thorough summary of the facts of the case:

The jury heard evidence that, on the morning of March 2, 2004, Porfirio Jaimes discovered the body of Elroy McBride on his property, where McBride had been living in a mobile home.  Jaimes recounted that blood was pooled around McBride's head.  Jaimes notified the authorities, and Deputy Keith Mutscher and Detectives Robert Speer and Rudy Woods of the Travis County Sheriff's Office went to the property to investigate.  Deputy Mutscher testified that McBride's body was located in a "tent-like" structure and covered under an "Indian or Mexican style blanket."  Blood was splattered on the structure.  A two-bladed axe, coated with blood and hair, was discovered near the body.

Detective Speer testified that Jaimes told him that he had seen a truck on the property the previous night, and that this truck was now parked "up the street on the corner."  The officers and Jaimes went to the location where the truck was parked, which was in the street in front of a travel trailer.  Speer testified that "within a matter of minutes" they were approached by Mark Tillman, who identified himself and verified that the truck belonged to him.  Detective Woods testified that he did not see any evidence of bruises or injuries on Tillman.  Woods testified that he asked Tillman if he knew Elroy McBride, and Tillman responded that he did.  Woods also asked him if he and McBride had any kind of problems, and Tillman said they did not.  Woods also testified that Tillman told him that he had spent the previous night at his sister's house.

Speer testified that while Woods was talking to Tillman, Speer ran a background search on Tillman and discovered that he had an outstanding warrant related to an assault on a family member.  Speer arrested Tillman pursuant to the outstanding warrant and transported him to the police station while Woods remained at the scene to continue the investigation.

Speer testified that, once they arrived at the station, he read Tillman his Miranda rights and proceeded to interview him on videotape.  Speer testified that Tillman admitted that he had been with McBride during the previous night, but reiterated that

there had been no kind of problem between the two of them and that Tillman had spent most of the night at his sister's house.  Speer testified that after further questioning, Tillman eventually admitted that he and McBride had a disagreement during the evening, and McBride "had swung at him and that he had swung back." Speer testified that at this point Tillman stated, "Anything else, I am going to have to speak to an attorney."  Speer did not interpret this statement as an unambiguous request for an attorney and continued to interview Tillman. Speer testified that Tillman eventually stated that McBride had called him an "ignorant Alabama hillbilly" on the night in question and stated that, whatever had happened to McBride, "he probably deserved it."

*Tillman*, at *1 (footnotes omitted).

## C.    Petitioner's Grounds for Relief

Petitioner raises five main grounds for relief.  First, he claims his trial counsel provided ineffective assistance by (a) "open[ing] the door" to the admission of statements previously suppressed by the trial court, (b) failing to move for a mistrial after the prosecutor disregarded the court's ruling on the suppression of certain statements, and (c) failing to object to the State's use of statements made by a witness no longer alive at the time of the trial.  Pet. at 7, 7A; Pet.'s Mem. at 2-3.  Second, he claims his appellate counsel provided ineffective assistance by (a) failing to raise a claim of trial counsel's ineffective assistance on appeal, (b) failing to notify Petitioner his direct appeal had been denied and he would not represent Petitioner further, and (c) filing a frivolous appeal.  Pet. at 7, 7B; Pet.'s Mem. at 3-4.  Third, he claims the prosecutor engaged in misconduct by using Petitioner's previously suppressed statements.  Pet. at 7; Pet.'s Mem. at 4-5.  Fourth, he alleges the trial court erred by (a) receiving the deceased witness's statement into evidence, (b) failing to grant a mistrial despite the prosecutor's continuous disregard for the court's rulings, and (c) allowing the prosecution to use Petitioner's previously suppressed statements at trial.  Pet. at 7,

7B; Pet.'s Mem. at 4-6. Fifth, he claims the evidence was not legally or factually sufficient to support a conviction for murder. Pet. at 7B; Pet.'s Mem. at 7.

**D.   Exhaustion of State Court Remedies**

Respondent concedes Petitioner has exhausted his state court remedies regarding all claims brought in this petition except for claim (2)(c), in which Petitioner alleges his appellate counsel provided ineffective assistance by filing a frivolous appeal. Resp. at 6. After reviewing the state court records, the Court agrees Petitioner has properly exhausted all claims in previous state court proceedings with the exception of claim (2)(c). Although Petitioner presented this claim in his first state application for habeas corpus relief, the Court of Criminal Appeals dismissed that application to allow Petitioner an opportunity to file an out-of-time PDR. Petitioner failed to raise claim (2)(c) in his second state application for relief, which was denied on the merits.

A federal court may not grant habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Woodfox v. Cain*, —F.3d—, 2010 WL 2505580 at *9 (5th Cir. 2010). Exhaustion requires the petitioner to "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). Since Petitioner has not presented the substance of claim (2)(c) in any form to the state courts, that claim remains unexhausted and is now procedurally barred.

Petitioner had the opportunity to raise claim (2)(c) in his second habeas corpus petition but failed to do so. A petitioner is barred from bringing unexhausted claims in a subsequent state habeas application after a final disposition on his initial application challenging the same conviction. TEX. CODE. CRIM. PROC. art. 11.07, § 4 (a)(1). A subsequent petition for state habeas relief on an

unexhausted claim would be futile, as it would be dismissed as an abuse of the writ, pursuant to TEX. CODE. CRIM. PROC. art. 11.07, § 4.

The general rule—that a state court must explicitly apply a procedural bar to preclude federal review—does not apply to those cases in which a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  *Id.* at n.1.  The exhaustion doctrine "reflects a policy of federal-state comity . . . designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)).  Therefore, "[a] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.*  These procedural requirements prevent petitioners from "avoid[ing] the exhaustion requirement by defaulting their federal claims in state court" only to petition the federal courts for redress. *Coleman*, 501 U.S. at 735.  However, a petitioner can still obtain federal habeas review on a claim denied by the state court on procedural default grounds if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996) (citing *Coleman*, 501 U.S. at 750).

As mentioned previously, Petitioner's second state habeas application was denied on the merits; therefore, since this application made no mention of the frivolous appeal, that claim is now procedurally barred and may not be reviewed on the merits by this Court.  Additionally, even though the Magistrate Judge noted the procedural bar in his Report and Recommendation, Petitioner fails

to show either cause or actual prejudice regarding his procedural default, and has made no showing a failure to address the merits of the federal claims would result in a miscarriage of justice. Thus, Petitioner's unexhausted claim—claim (2)(c)—is barred.

### ANALYSIS

## I.      Legal Standard under 28 U.S.C. § 2254

The standard of review in federal habeas cases filed by state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, 110 Stat. 1214 (1996). Under AEDPA, a habeas petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001). A presumption of

correctness attaches to factual determinations made by a state court.  28 U.S.C. § 2254(e)(1).  A habeas petitioner must rebut this presumption by clear and convincing evidence.  *Id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

The Fifth Circuit has held that, because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when state habeas relief is denied without an opinion.  *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citing *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").  With these principles in mind, this Court turns to the issues raised by the pleadings in this cause.

## II.    Ineffective Assistance of Trial Counsel

In his first ground for relief, Petitioner argues he was denied effective assistance of counsel at trial.  Specifically, Petitioner asserts his counsel was ineffective because he (a) "opened the door for admission" of statements previously suppressed by the trial court, (b) failed to move for a mistrial on the ground that the prosecution was disregarding the court's ruling regarding suppressed statements, and (c) failed to object to the State's use of statements made by a deceased witness.[2]  Pet. at 7, 7A; Pet.'s Mem. at 2-3.

### (a)    Legal Standard

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding.  *Cuyler v. Sullivan*, 446

---

[2] The deceased witness, Anthony Benesh, died of natural causes before Tillman's trial.

U.S. 335, 344 (1980).  Thus, an allegation of ineffective assistance of counsel is a cognizable basis for collateral review.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  To establish ineffective assistance of counsel, a petitioner must allege and prove (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish the "deficient performance" prong, a petitioner must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel'" the Sixth Amendment guarantees.  *Id.*  The attorney's conduct is reviewed with great deference, and there is a strong presumption that counsel has exercised reasonable professional judgment.  *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986).  The standard for reasonableness is an objective standard.  *See Strickland*, 466 U.S. at 687.  An attorney is not required to make futile objections, nor to press frivolous points.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Furthermore, the defendant must overcome the presumption the challenged action would be considered sound trial strategy on his counsel's part.  *Strickland*, 466 U.S. at 690.

To establish the "prejudice" prong, a petitioner must establish a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A 'reasonable probability' is one sufficient to undermine confidence in the outcome of the proceeding."  *Nixon v. Epps*, 405 F.3d 318, 324 (5th Cir. 2005) (citing *Koch*, 907 F.2d at 527).  Petitioner must show more than that a different result would have been "possible."  *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997).  He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable."  *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997).  When a petitioner fails to meet **either** requirement of the *Strickland* test, his ineffective

assistance of counsel claim is defeated. *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996) (emphasis added).

**(b)     Discussion**

In claim (1)(a), Petitioner contends his trial counsel provided ineffective assistance by questioning him about statements he made to the police regarding statements made by the deceased, even though these statements had been suppressed by the trial court. Pet. at 7, 7A; Pet.'s Mem. at 2-3. Petitioner claims this tactic "opened the door" for the state to use the previously suppressed statements, thereby preventing Petitioner from successfully proving his self-defense claim, and had the effect of "inflaming the minds of the jury that the applicant 'hack [sic] to death' the deceased because the 'deceased call [sic] the applicant' a G-D-M-F illiterate hillbilly and 'the deceased' was going to cut the applicant up." *Id.*; Pet. at 7A.

Nonetheless, introducing the statements appears to have been a reasonable trial strategy on the part of Petitioner's counsel. Petitioner's trial counsel, Tom Weber, submitted an affidavit during Petitioner's state habeas proceedings in support of his actions at trial. In the affidavit, he explained the defense's trial strategy and the circumstances under which the statements at issue came to light:

> Tillman had made incriminating statements, before his invocation of a right to an attorney, about fighting McBride in a drunken brawl that was ruled admissible[.]... Tillman said he hit McBride and left him alone on the ground. Another witness... testified for the State about the conflict between the defendant and the victim. DNA (blood) found on Tillman's jeans and sweatshirt matched up to the victim's DNA, according to the testifying DPS Crime Lab Technician. The State's evidence that Tillman was guilty of killing McBride was therefore substantial. The victim suffered five brutal wounds to the head by an axe. The victim's blood was all over Tillman's clothes. Tillman was the last person with the victim, and Tillman admitted he fought the victim[.] ...Tillman wanted to testify to try to get a self-defense charge, or a manslaughter charge. Tillman instructed me that he wanted to testify about defending himself against McBride and that McBride called him a hillbilly[.]

It is clear from the transcript that I did not bring up the language about the accused being called a Hillbilly by the victim.  Tillman offered that himself in his own testimony. ...Because only Tillman and McBride were present at the time of McBride's death, Tillman was insistent that he testify and present to the jury how the whole incident occurred.  Tillman brought up the hillbilly comment to support McBride as the aggressor.  Only because of Tillman's testimony did he get a self-defense charge...

The combination of Tillman's own incriminating statements, DNA evidence on Tillman's clothes linking him to the murder, and testimony of witnesses at the scene proved insurmountable to a not guilty verdict.  Also, the five blows to the deceased played a huge role in preventing the jury from accepting the self-defense argument. ...The evidence of the aggressiveness of the decedent toward Tillman, the witnesses I called that told of McBride's aggressiveness...and Benesh's statement [that Tillman told Benesh he acted in self-defense] in fact did mitigate Tillman's punishment.  I tried the case exactly as Tillman wanted, and with complete preparation on my part.

*Ex parte Tillman*, Appl. No. 68, 958-02 at 50-53.

The state court found counsel's affidavit credible and concluded Petitioner had not shown deficient performance or prejudice as articulated in *Strickland.  Id.* at 89-90.  Having conducted an independent review of the entire state court record, the Court notes trial counsel did object many times to the prosecutor's use of previously suppressed statements, as well as to aspects of the direct examination of witnesses such as Detective Speer and Petitioner.  *See, e.g.*, 5 RR 186-87, 189-91.  Not only was Petitioner's counsel not deficient, he appears to have been a vigilant advocate on behalf of his client.  Moreover, the trial court found Petitioner voluntarily testified about his police statement and the victim's remarks to Petitioner, and this testimony was part of his trial strategy, according to his trial counsel.  *Ex Parte Tillman*, at 89-90.  Petitioner's discussion of the suppressed statements during his testimony appears to have fit in with this overall strategy.  Resp. at 17; Pet. at 7, 7A.

Accordingly, the Court finds Petitioner has not overcome the strong presumption that counsel's decision to question Petitioner about his statements to the police was reasonable trial strategy. Furthermore, given the overwhelming evidence of Petitioner's guilt, Petitioner has failed to show there is a reasonable probability he would not have been convicted had Petitioner not testified about the statements. Even if eliciting the suppressed statements had not been determined to be a sound trial strategy, overwhelming evidence of a defendant's guilt supports the conclusion he suffered no prejudice as a result of counsel's performance or errors. *See United States v. Royal*, 972 F.2d 645-46 (5th Cir. 1992) (holding improperly admitted evidence, if error at all, was harmless to defendant given the overwhelming evidence of his guilty); *United States v. Williams*, 957 F.2d 1238, 1243 (5th Cir. 1992) (holding the same). "If an error is harmless and nonprejudicial," it need not require a reversal. *United States v. Oakley*, 827 F.2d 1023, 1026 (5th Cir. 1987) (per curiam). Here, it appears no such errors occurred, as Petitioner's counsel was justified in putting Petitioner on the stand and in questioning him about the previously suppressed statements. The Court finds nothing unreasonable in the state court's application of clearly established federal law or in its determination in light of the evidence.

Petitioner next alleges his counsel was ineffective for failing to file a motion for mistrial after the State used Petitioner's previously suppressed statements during trial. Pet. at 7A; Pet.'s Mem. at 2-3. Upon independently reviewing the trial court records, this Court finds Petitioner's counsel *did* move for a mistrial during the prosecutor's re-cross-examination of Detective Robert Speer.[3]

---

[3] Specifically, Mr. Weber objected to the prosecution's line of questioning regarding the Detective's pre-indictment interview with Petitioner. Mr. Weber objected several times when prosecutor Duke Hildreth asked the Detective whether or not he believed Petitioner's explanation of why he feared the victim. Subsequently, Mr. Weber moved for a mistrial. *See* 5 RR 210-212.

5 RR 212.  The motion was overruled.  *Id.*  Even if counsel had not moved for a mistrial, counsel's conduct would not have proved deficient.   Petitioner's counsel had questioned him on direct examination about the previously suppressed statements; accordingly, the State was free to discuss these statements on cross-examination pursuant to Texas Rule of Evidence 107.  Counsel had no obligation to move for another mistrial after his first motion was overruled, because it is not unreasonable for counsel to fail to raise futile or meritless objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  The state court concluded Petitioner had not demonstrated deficient performance or prejudice under *Strickland* for his counsel's alleged failure to move for a mistrial.  Having conducted an independent review of the entire state court record, this Court agrees, and finds nothing unreasonable in the state court's application of clearly established federal law or in its determination of the facts in light of the evidence.

Finally, Petitioner contends his counsel was deficient in failing to object to the State's examination of a statement made by Anthony Benesh, the witness who passed away prior to trial. Pet. at 7A.  As Mr. Weber stated in his affidavit, he introduced Benesh's statement as part of the defense's strategy to plead self-defense.  Resp. at 19.  In his affidavit before the state habeas court, Petitioner's counsel stated:

> I also introduced a statement of Anthony Benesh, a deceased friend of Tillman's who said that Tillman... told Benesh that Tillman only killed "Mack" (McBride) in self-defense after McBride attacked Tillman with a knife, which was found at the crime scene...[T]his statement completely supported Tillman's self defense claim[.]...  Prior to trial, and during the trial, Tillman repeatedly urged me to introduce Benesh's statement, which supported Tillman's self defense claim.

*Ex parte Tillman*, Appl. No. 68, 958-02 at 52-53.  The state habeas court concluded Petitioner did not demonstrate he had received ineffective assistance of counsel on this basis.  *Id.* at 90.  Petitioner

offers no evidence to overcome the strong presumption that counsel's decision to introduce Benesh's statement was sound trial strategy.  A court need not consider Petitioner's "bald assertions on a critical issue in his *pro se* petition…, unsupported and unsupportable by anything else contained in the record."  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Moreover, given the overwhelming evidence of Petitioner's guilt, Petitioner has failed to show there is a reasonable probability he would not have been convicted had Benesh's statement not been introduced.  The statement was not prejudicial to Petitioner's case.  Thus, the Court concludes there was nothing unreasonable in the state court's application or clearly established federal law, and the state court did not make an unreasonable determination of the facts in light of the evidence.

## III.  Ineffective Assistance of Appellate Counsel

In his second claim for relief, Petitioner argues his appellate counsel provided ineffective assistance throughout his direct appeal.  Specifically, he argues counsel was deficient in (1) failing to raise a claim of ineffective assistance of trial counsel on appeal, and (2) failing to notify Petitioner his appeal had been denied and counsel would not be representing him further.  Pet. at 7, 7B; Pet.'s Mem. at 3-4.

A criminal defendant has a constitutional right to effective counsel in his first appeal. *Hughes v. Booker*, 220 F.3d 346, 348-49 (5th Cir. 2000) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).  The appellate attorney must play the role of an active advocate, rather than "a mere friend of the court assisting in a detached evaluation of the appellant's claim;" but, the attorney need not advance ***every*** argument urged by the appellant, regardless of its merit.  *Evitts*, 469 U.S. at 394. Where a petitioner claims his appellate counsel failed to raise or fully brief a particular claim, the

-14-

petitioner must show counsel's performance was both deficient and prejudicial. *Hughes*, 220 F.3d at 349. However, where counsel's performance constituted a complete actual or constructive denial of assistance, such that the right to counsel under the Sixth Amendment remains virtually unmet, prejudice toward the petitioner is presumed. *Id.*

Here, Petitioner argues his appellate counsel, Raymond Kohler, failed to assert on appeal that Petitioner's trial counsel provided ineffective assistance. Because Petitioner complains his counsel failed to raise a particular claim, under the standard in *Hughes*, Petitioner must show this failure was both deficient and prejudicial. On state habeas review, the court found trial counsel pursued a reasonable trial strategy under the circumstances and after consultation with Petitioner. *Ex parte Tillman*, at 89. A review of the state court records indicates trial counsel provided reasonably effective advocacy in pursuit of a legitimate trial strategy. As explained above, this Court finds Petitioner's trial counsel was not ineffective. Therefore, because an ineffective assistance of counsel claim would have lacked merit, appellate counsel was not ineffective in choosing not to raise that claim. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Smith v. Puckett*, 907 F.2d 581, 585, n.6 (5th Cir. 1990)). Thus, Petitioner had not demonstrated deficient performance or prejudice under *Strickland* on this basis. *Ex parte Tillman*, at 90.

Petitioner next claims his appellate counsel failed to notify Petitioner of the outcome of his direct appeal and that he would no longer be representing Petitioner. Pet. at 7B; Pet.'s Mem. at 4. As explained by the state court and the Magistrate Judge, Petitioner was granted permission to file an out-of-time PDR because it was unclear whether appellate counsel had informed Petitioner his

conviction had been affirmed by the appellate court.[4]  *See Ex parte Tillman*, at 88.  Thus, even if

appellate counsel's performance was deficient, Petitioner cannot have been prejudiced by his failure

to inform him his conviction had been affirmed, as Petitioner was granted relief in his first state writ

when the trial court allowed him to pursue an out-of-time PDR.  *See Ex parte Mark Randall Tillman*,

No. AP-75,808.  Petitioner cannot claim deficiencies on the part of his appellate counsel merely

because is unhappy with the adverse judgment rendered by the Court of Criminal Appeals.

## IV.    Prosecutorial Misconduct

_____In his third ground for relief, Petitioner claims the prosecution erred by questioning Petitioner

about the content of the previously suppressed statements.  Pet. at 7; Pet.'s Mem. at 4-5.  The state

habeas court found:

> The applicant has not shown that any prosecutorial misconduct occurred when the State
> inquired into the applicant's statement to police and the victim's remarks to the applicant
> after the applicant had voluntarily testified about these matters himself as part of his trial
> strategy.

*Ex parte Tillman*, at 90.  While Petitioner has the right to challenge alleged constitutional violations

resulting from his original conviction and sentence, "[m]ere conclusory statements do not raise a

constitutional issue in a habeas case."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  Since

---

[4] As Respondent explains, in Petitioner's first state writ,

The trial court found that "applicant's appellate attorney died on September 29, 2006," and "[u]nder
these unusual circumstances, it is impossible to obtain a statement from counsel concerning whether
he notified the applicant of the decision of the court of appeals or advised him that he had the right to
file a pro se PDR." SHCR-01 at "Action Taken" sheet, 77-78.  The trial court concluded, "in the
interest of justice, the applicant should be granted the right to file an out-of-time, pro se PDR." *Id.*
at 78 (conclusion d).

Resp. at 21-22.  The Court of Criminal Appeals subsequently granted Petitioner's request to file his out-of-time
PDR.  *See Ex Parte Mark Randall Tillman*, No. AP-75,808.

Petitioner has not shown something "more . . . than conclusory allegations," his claim is not tenable.
*Id.*

Moreover, it is clear from the record that the prosecutor used the suppressed statements only after defense counsel used them during his examination of Petitioner.[5]  Under the Texas Rules of Evidence,

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given into evidence, as when a letter is read, all letter on the same subject between the same parties may be given.

TEX. R. EVID. 107.  As defense counsel introduced the statements during trial, the prosecutor was free to take advantage of their admission into the trial as evidence.  *Id.*  Thus, the prosecution did not err in questioning Petitioner about the subject matter of the previously suppressed statements, and Petitioner's claim of error is untenable.  The state court's application of clearly established federal law was not unreasonable, and the state court made no unreasonable determinations of the facts in light of the evidence.

## V.     Trial Court Error

Petitioner contends in his fourth ground for relief the trial court erred in (a) admitting into evidence statements made by a deceased witness, (b) failing to grant his trial counsel's motion for a mistrial, and (c) allowing the prosecution to use previously suppressed statements.  Pet. at 7, 8;

---

[5]On direct examination, trial counsel questioned Tillman about the circumstances surrounding the victim's murder.  5 RR 140-150.  Some of the statements Tillman made in telling his story overlapped with statements Tillman made to the police during custodial interrogation which the court ordered suppressed.  2 RR 49; *see* Resp. at 23-24.

Pet.'s Mem. at 4-6.  On state habeas review, the state court concluded Petitioner had not shown evidence the trial court erred in admitting various evidentiary matters and in overruling the motion for a mistrial.  *Ex parte Tillman*, at 90.  The state court also concluded Petitioner's claims were not cognizable on collateral attack.  *Id.*

        In conducting a habeas review, a federal court is limited to deciding whether a petitioner's conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see* 28 U.S.C. § 2241.  Put differently, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  A petitioner is thus entitled to federal habeas relief due to a state-law question such as trial error only if such error resulted in "actual prejudice" toward petitioner.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).  Under the *Brecht* standard, a petitioner must show there is more than a reasonable possibility that a trial court error contributed to the verdict.  *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (citing *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996) (citation and emphasis omitted)).

        Here, Petitioner's trial counsel introduced the deceased witness's statement and "opened the door" regarding Petitioner's statement as part of his trial strategy to prove Petitioner's self-defense claim.  *See Ex parte Tillman*, at 52-53.  Thus, Petitioner fails to show the trial court's alleged errors rendered his trial fundamentally unfair or prejudiced him, or that another outcome might have been rendered had such "errors" not occurred.  This Court finds nothing unreasonable in the state court's application of federal law or its determination of facts in light of the evidence.

        Petitioner also alleges the trial court's failure to grant his trial counsel's motion for a mistrial was an error entitling him to federal habeas corpus relief.  However, the trial court was within its

discretion in overruling trial counsel's motion for a mistrial.  As the Supreme Court has long held, the law invests the court with the power to discharge a jury from giving a verdict (by calling for a mistrial), but "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. 579, 580 (1824).  The facts presented here and the state court record simply do not indicate there were any "plain and obvious causes" which would have supported a mistrial.  Moreover, because the prosecution was following the Texas Rules of Evidence when it chose to use the suppressed statements, the trial court's refusal to grant the mistrial was not in error.  *See* TEX. R. EVID. 107.

Likewise, as discussed above, the trial court did not err in allowing the State to use previously suppressed statements after defense counsel opened the door to them.  As the Court finds nothing unreasonable in the state court's application of clearly established law or in its determination of the facts in light of the evidence, Petitioner's application for habeas relief is denied on this ground.

## VI.    Sufficiency of the Evidence to Support a Conviction

In his final claim for relief, Petitioner alleges the evidence presented at trial was legally and factually insufficient to support a conviction.  Specifically, Petitioner argues the State failed to disprove that he acted in self-defense, as he claimed at trial.  Pet. at 7B; Pet.'s Mem. at 7.

### (a)    Legal Sufficiency

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The evidence need not rule out every reasonable hypothesis of innocence or be entirely consistent with every conclusion except guilt. *United States*

*v. Triplett*, 922 F.2d 1174, 1177 (5th Cir. 1991).  So long as a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, "the conviction will stand."  *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996).

In order to find Petitioner guilty of murder beyond a reasonable doubt, the jury had to determine he: (1) intentionally or knowingly caused the death of an individual; (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual; or (3) committed or attempted to commit a felony, other than manslaughter, and in the course of an in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual.  TEX. PENAL CODE § 19.02(b).  Self-defense is an affirmative defense to murder and must be proved by the defendant by a preponderance of the evidence.  TEX. PENAL CODE §§ 2.04 and 9.32.  In Texas, a person is justified in using deadly force in self-defense against another if he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, and if a reasonable person in his situation would not have retreated.  TEX. PENAL CODE § 9.32(a).  Whether Petitioner reasonably believed the use of deadly force to be immediately necessary under the circumstances was an issue of fact for the jury.  *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).  The jury obviously concluded his actions did not show self-defense by a preponderance of the evidence.

Petitioner challenged the legal sufficiency of the evidence in his direct appeal.  The appellate court noted:

> The jury heard conflicting evidence regarding the circumstances preceding McBride's death.  Tillman testified that on the night of the incident, he and McBride were sitting around and drinking beer with Jaimes and some of McBride's friends.

> According to Tillman, McBride "started getting real belligerent" and told Tillman to "shut up" and "stop embarrassing him" in front of his friends[.] ...Later that night...Tillman was sitting in his truck when McBride approached him, "barked" vulgar language at him, and grabbed him by the shirt, ripping off the shirt.

*Tillman v. State*, at \*4-5.   Tillman then testified that McBride came running towards him unprovoked, with a butcher's knife in his hand, the two exchanged blows, both calmed down, but McBride suddenly grabbed the butcher knife and "lunged at" Tillman with it.   *Id* at \*5.   Tillman testified he then grabbed the axe and swung it at McBride; he remembered hitting McBride twice with the axe.   *Id.*

_____Physical evidence contradicted Tillman's testimony.   *Id.*   The medical examiner who performed an autopsy on McBride testified the victim had been struck with an axe numerous times while lying on the ground, and he described five, not two, "chopping" wounds to the victim's head and neck.   *Id.*   The examiner testified that any one of the five blows would have knocked the victim down, and any one of three blows fracturing the cervical vertebrae would have paralyzed him. *Tillman*, at \*5.   Based on this evidence, the state appellate court found—and this Court agrees—the jury could rationally have believed that, once the victim was lying on the ground paralyzed, it was highly unlikely Petitioner's use of the axe was immediately necessary to protect himself. Furthermore, Tillman testified that McBride angered him by calling him an "ignorant Alabama hillbilly" and that this anger was a factor in what he did.   *Id.*   A jury could rationally believe Tillman's anger, not fear for his own life, caused him to hit McBride many times with the axe.   *Id.*

In sum, the evidence was sufficient for the jury to conclude Tillman intentionally or knowingly killed or seriously injured the victim, given the history of that evening, Petitioner's own testimony about his anger over the victim's insults, and the fact that swinging an axe into the

victim's head was an act clearly dangerous to human life.  Moreover, the State provided expert testimony to contradict Petitioner's version of events.  4 RR 33-67.  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying a conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).  Here, both the prosecutor's case and Petitioner's testimony provided substantial evidence to support a conviction.  Thus, the jury could have rationally concluded beyond a reasonable doubt Petitioner murdered McBride and did not commit his actions in self-defense.  Accordingly, the Court finds nothing unreasonable in the state court's determination that the evidence at trial was legally sufficient to find Petitioner guilty, and his claim for federal habeas relief is denied on this ground.

**_____(b)      Factual Sufficiency**

Petitioner also claims the evidence was factually insufficient to support his conviction and sentence.  State appellate courts have the authority to review fact questions in criminal cases, an authority vested in those courts by the Texas Constitution and Texas statute.  TEX. CONST. art. V., §§ 5 & 6; *see Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).  But while Texas permits reviews of "factual sufficiency" by state appellate courts, there is no corresponding federal right to such reviews under the United States Constitution.  "State evidentiary law simply has no effect on [federal] review of the constitutionality of a trial," unless Petitioner asserts the state law itself violates the Constitution.  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  Petitioner asserts no such constitutional violations, nor does he point to any unconstitutional state laws.  Accordingly, Petitioner's claim attacking the factual sufficiency of the evidence is not cognizable in federal habeas proceedings.

## PETITIONER'S OBJECTIONS

In his objections to the Magistrate Judge's Report and Recommendation, Petitioner reiterates his previous claims without advancing any additional arguments in support of his petition.  *See* Pet.'s Objs. [#16].  Petitioner also consolidates his claims of alleged errors by the prosecution and the trial court, and states both the court and the prosecutor denied him a fair trial by allowing Petitioner's "suppressed court-ordered statement into evidence."   Pet.'s Objs. at 7.   However, merely consolidating two previously stated claims, neither of which are tenable, does not advance Petitioner's argument further.   Petitioner's objections do not offer any additional evidence or argument in support of his original claims for federal habeas relief.  *See* Pet.'s Objs.  Thus, his petition for relief is DENIED in full.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability ("COA")."  28 U.S.C. § 2253(c) (1)(A).   Pursuant to Rule 11 of the Federal Rules Governing § 2254 Cases, effective December 1, 2009, the district court must issue or deny a COA when it enters a final order adverse to the petitioner.

A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a COA shall not be issued.

CONCLUSION

In accordance with the foregoing:

IT IS ORDERED that the Report and Recommendation of the Magistrate Judge [#14] is ACCEPTED.

IT IS FURTHER ORDERED that Petitioner Mark Randall Tillman's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [#1] is DENIED.

SIGNED this the 9th day of July 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE